LEONARD J. JACOBS & another, receivers,[1] & another[2] *vs.*
TOWN CLERK OF ARLINGTON;[3] THE GUARDIAN LIFE
INSURANCE COMPANY OF AMERICA, intervener.

Middlesex.   February 3, 1988. — July 13, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Insurance*, Life insurance, Unfair act or practice. *Evidence*, Presumptions.
   *Death. Consumer Protection Act*, Insurance.

Receivers of the assets of a person missing since 1977, and a beneficiary of
   the missing person's life insurance policy, seeking a declaration that the
   person was dead, did not sustain their burden of proof in the face of
   controverting evidence that the missing person had motive, propensity
   and means to flee serious criminal charges at the time he disappeared.
   [828]
Dismissal of unfair insurance settlement practice claims brought under G. L.
   c. 93A and c. 176D, § 3, was proper, where the insurance company's
   "extensive" and "complete" investigation was reasonably relied on in
   rejecting a certain claim, and where the claimants were not "insureds"
   entitled to protection under c. 176D, § 3 (9) (*g*). [828-829]


CIVIL ACTION commenced in the Middlesex Division of the
Probate and Family Court Department on February 4, 1985.

On transfer to the Superior Court Department the case was
heard by *Jeremiah J. Sullivan*, J., sitting under statutory author-
ity.

The Supreme Judicial Court granted a request for direct
appellate review.

*Owen Gallagher* (*John P. Graceffa* with him) for the inter-
vener.

---

[1] Ruth Jacobs, as receivers of the assets of Richard C. Jacobs.

[2] Jet Spray Corporation, a beneficiary of insurance on the life of Richard
C. Jacobs.

[3] The town clerk of Arlington is not a party to this appeal.

*Morris M. Goldings* (*Richard S. Jacobs* with him) for the plaintiffs.

HENNESSEY, C.J. This case arises out of the disappearance of Richard C. Jacobs (Jacobs) on or about May 10, 1977. Jacobs was reported missing when he failed to appear at his trial in New Orleans, Louisiana, on charges of aggravated rape and crimes against nature. Prior to Jacobs's disappearance, The Guardian Life Insurance Company of America (Guardian) had insured his life. Under its insurance contracts, Guardian is obligated to pay death benefits upon presentation of "due proof of death."

In 1978, the beneficiaries of Guardian's insurance on Jacobs's life informed Guardian that the whereabouts of Jacobs were unknown, and requested payment of death benefits. After investigation, Guardian rejected these claims for lack of due proof of death, and required premium payments to be continued in order to keep the policies in effect. The policy beneficiaries continued to pay the premiums.

On February 4, 1985, the plaintiffs Leonard J. Jacobs and Ruth Jacobs (the receivers), as receivers of Jacobs's assets, petitioned the Probate Court for an order of mandamus compelling the town clerk of Arlington to issue a death certificate for Jacobs, on the basis of Jacobs's disappearance and continued absence since May 10, 1977. Under Guardian's customary practice, presentation of a death certificate would constitute due proof of death, and so obligate Guardian to pay its policies' death benefits. Guardian was allowed to intervene in this action to oppose the receivers' petition, and filed an intervener's complaint seeking, among other things, a declaration that there was not sufficient evidence to determine that Jacobs was dead, and that Jacobs in fact was living and a fugitive from justice.

To Guardian's complaint, the receivers filed an answer denying the allegations as to the continued life of Jacobs, and counterclaims, alleging that Guardian's claim settlement practices violated G. L. c. 93A and c. 176D (1986 ed.). They requested that the court order Guardian to refund the premiums

paid subsequent to Jacobs's disappearance, and to pay its policies' death benefits, multiple damages, interest, costs, and attorneys' fees.

Subsequently, the receivers' petition for the issuance of a death certificate, Guardian's amended complaint, and the receivers' counterclaims were transferred to the Superior Court. The case was tried to a judge, who subsequently ordered the entry of judgment for the receivers, and ordered dismissal of the receivers' counterclaims. Both parties appealed. We granted Guardian's petition for direct appellate review. We reverse the judgment for the receivers, and order the entry of a declaration, as urged by Guardian in its intervener's complaint, that as matter of law it is presumed that Jacobs is alive. We also affirm the dismissal of the receivers' counterclaims.

1. *Proof of death.* Guardian contends that the judge erred both in ruling that the evidence gave rise to a presumption of death, and in ruling that the effect of the presumption was to shift to Guardian the burden of proof on the issue of Jacobs's death. Arguably, the presumption of death never arose in this case because, almost from the beginning of the trial, the receivers' evidence as to the facts which gave rise to the presumption (i.e., Jacobs's disappearance and continued, unexplained absence, without tidings, for more than seven years) was met by controverting evidence. Further, it is clear that the judge erred in applying the presumption to shift to Guardian the burden on the issue of Jacobs's death.[4] However, we need not consider further the judge's rulings as to the presumption of death because a majority of the court concludes that, on the total evidence, Guardian is entitled to prevail as matter of law.

Once a person is shown to have been living, the presumption of life continues until rebutted. *Bartley* v. *Boston & N. St. Ry.*,

---

[4] The challenged rulings read: "7. Leonard Jacobs, Ruth Jacobs and the Jet Spray company have proven by a preponderance of the believable evidence in this case that the presumption of death of Richard Jacobs has been established and a prima facie case proven. 8. The Court finds that upon the believable evidence of this case, presumption of death of Richard Jacobs has been met and the burden of denying death is upon the Guardian Life Insurance Company. 9. The said Guardian Life Insurance Company has not sustained the burden of proof that Richard Jacobs is not dead."

198 Mass. 163, 172 (1908). See *Ross* v. *Cohen*, 352 Mass.
51, 53 (1967); *Knapp* v. *Graham*, 320 Mass. 50, 54 (1946);
*Allen* v. *Mazurowski*, 317 Mass. 218, 220-221 (1945). But
"upon a person's leaving his usual home and place of residence
for temporary purposes of business or pleasure, and not being
heard of, or known to be living, for the term of seven years,
the presumption of life ceases, and that of his death arises."
*Loring* v. *Steineman*, 1 Met. 204, 211 (1840). The effect of
the presumption of death is to shift to the party denying death
the burden of production on this issue, i.e., the burden of
going forward with evidence that controverts the presumed
fact of death. See, e.g., *Commonwealth* v. *Pauley*, 368 Mass.
286, 290-292 (1975); *Riordan's Case*, 362 Mass. 882, 882-883
(1972); *Epstein* v. *Boston Hous. Auth.*, 317 Mass. 297, 302-
303 (1944). Accord Fed. R. Evid. 301. Contra, Proposed Mass.
R. Evid. 301 (a) (shifts burden of persuasion). It does not shift
the ultimate burden of persuasion, see, e.g., *Pauley, supra*;
*Riordan's Case, supra*; *Epstein, supra*, which remains where
the law places it, on the party alleging death, as a condition
precedent to recovery on his insurance contract. See *Larsen*
v. *Metropolitan Life Ins. Co.*, 289 Mass. 573, 576 (1935).

We summarize the facts as found by the judge. The judge
found that extensive investigation had failed to disclose any
information as to Jacobs's whereabouts; that, since his disap-
pearance, he had not been seen or heard from by his mother,
with whom he had a close relationship, or his brother, with
whom he had been in business; that he had left a large amount
of liquid assets, which had remained untouched and unclaimed;
and that he had told a friend that he would kill himself before
he would go to prison. On the other hand, the judge found
facts controverting the receivers' assertion that Jacobs was
dead, and consistent with its position that Jacobs was still
living and had absconded. These findings showed that Jacobs
had the motive, propensity, and means to flee justice. As to
motive, the judge found that Jacobs was facing serious criminal
charges in Louisiana, and faced a severe prison sentence if con-
victed; that Louisiana prosecutors had photographs of Jacobs in

flagrante delicto, having sex with young boys, and that some of these boys had positively identified Jacobs as having had sex with them; and that Jacobs was aware that the Louisiana prosecutors had refused to plea bargain with him as to the pending charges, and that two codefendants in the indictments had already been convicted and sentenced to terms of imprisonment of forty-five and seventy-five years, respectively. As to propensity, the judge found that Jacobs previously had been arrested on a similar charge in England, and had fled that jurisdiction to avoid prosecution. As to means, the judge found that "Jacobs had the financial ability to prepare a flight from justice," including, among other assets, a Swiss bank account.

The presumption of death in this case, if it ever arose, disappeared when controverting evidence appeared. See *Pauley, supra; Riordan's Case, supra; Casagrande* v. *F.W. Woolworth Co.,* 340 Mass. 552, 555-556 (1960); *Epstein, supra.* The issue before us is whether the totality of the proof was sufficient to warrant a conclusion, by a preponderance of the evidence, that Jacobs was dead. A majority of the court concludes that the receivers did not sustain their burden of proving that Jacobs was dead, as the evidence presented was, as a matter of law, insufficient to warrant a finding to this effect.[5] Cf. *Ross* v. *Cohen,* 352 Mass. 51, 53-54 (1967); *Sargent* v. *Massachusetts Accident Co.,* 307 Mass. 246, 247-251 (1940); *Hanzes* v. *Flavio,* 234 Mass. 320, 328 (1920). Accordingly, we must reverse the judgment for the receivers, and remand the case to the Superior Court with instructions to enter a declaration that, presumptively, Jacobs is living. See *Knapp, supra; Allen, supra; Bartley, supra.*

2. *Unfair claim settlement practices.* The receivers contend that the judge below erred in dismissing their counterclaims

---

[5] A minority of the court would hold that the evidence in the case warranted a decision by the fact finder for either the receivers or Guardian, with all questions of credibility and weight of the evidence resting in the fact finder's discretion. They would, accordingly, by reason of the judge's erroneous rulings, note 4, *supra,* reverse the judgment for the receivers and remand the case for a new trial.

under G. L. c. 93A and c. 176D, § 3 (9) (*d*) and (*g*).[6] We affirm the dismissal of these counterclaims.

General Laws c. 176D, § 3 (9) (*d*), prohibits "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information." The judge below found, on evidence which warranted his findings, that the combined efforts of Guardian's investigators and those of law enforcement agencies and private firms,[7] resulted in an investigation that was "extensive," "intensive," "massive," and "complete," and that Guardian reasonably relied on the results of these investigations in rejecting the receivers' claims for death benefits. There was no error in these findings.

General Laws c. 176D, § 3 (9) (*g*), prohibits "[c]ompelling *insureds* to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such *insureds*" (emphasis added). This language creates no rights in persons other than the insured. Compare this language to that of § 3, subsections (9) (*j*) ("insured or beneficiaries"); (9) (*k*) ("insured or claimants"); and (9) (*l*) ("insured or claimant"). See *Whyte* v. *Connecticut Mut. Life Ins. Co.*, 818 F.2d 1005, 1011 n.20 (1st Cir. 1987) (construing G. L. c. 176D, § 3 [9] [*g*]). Accord *Royal Globe Ins. Co.* v. *Superior Court*, 23 Cal. 3d 880, 888 (1979); *Hart-Anderson* v. *Hauck*,       Mont.       , -       (1988) (748 P.2d 937, 940-941 [Mont. 1988]); *Green* v. *Holm*, 28 Wash. App. 135, 139 n.3 (1981); *Jenkins* v. *J.C. Penney Casualty Ins. Co.*, 167 W.Va. 597, 601-605 (1981). Because the receivers have predicated their claim under G. L. c. 93A on the above provisions of G. L. c. 176D, this claim also fails.

---

[6] Chapter 176D, § 3, prohibits certain unfair or deceptive acts or practices in the business of insurance. Chapter 93A provides a civil cause of action in favor of persons injured as a result of such prohibited acts or practices. G. L. c. 93A, § 9 (1). See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675 (1983).

[7] Jacobs's disappearance was investigated by Louisiana law enforcement agencies, the Federal Bureau of Investigation, Interpol, a world-wide international investigation agency, and the private firms of Special Agents Consultants, New England Investigative Services, and Equifax, Inc.

3. *Conclusion.* The judgment for the receivers is reversed, and the case is remanded to the Superior Court with instructions to enter a declaration that Jacobs is living. The judgment dismissing the receivers' counterclaims is affirmed.

*So ordered.*