Paul **BRANDLEY** and Gayle Brandley, Plaintiffs,

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY,** Defendant.

Civ. A. No. 91–12875–MA.

United States District Court, D. Massachusetts.

April 15, 1993.

Hans R. Hailey, Law Office of Hans R. Hailey, Boston, MA, for plaintiffs.

Denise K. Cahalane, Ralph C. Sullivan, Morrison, Mahoney & Miller, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This matter arises from a claim for insurance coverage for personal injuries sustained by the plaintiffs in a two-vehicle automobile accident. The underlying claim has since been settled, but the plaintiffs' allegation that the insurer of the other driver has engaged in unfair claims settlement practices remains. The case is presently before me on cross motions for summary judgment.

## I. BACKGROUND

On March 30, 1988, Paul and Gayle Brandley were driving east on Route 106 near Plainville, Massachusetts when they were hit by a pick-up truck which ran a red light at the intersection with Route 152. The Brandleys suffered serious personal injuries (Mrs. Brandley's injuries are particularly severe).

The Brandleys' attorney first contacted United States Fidelity & Guaranty Company, the insurer of the other driver's employer, by letter on April 29, 1988. *See* Defendant's Ex. G(1). The parties agree that there was no response to this letter and that no further correspondence occurred until November 1989. *See* Defendant's Ex. G(2), G(4). When letters dated November 10, 1989 and December 8, 1989 failed to elicit any response from Fidelity,[1] demand was made pursuant to

1. Fidelity did send the Brandleys' attorney a form letter dated February 27, 1990 indicating the name of the claims adjuster assigned to Paul's case and the claim number. *See* Plaintiffs'

Ex. 7F. Fidelity sent a similar notice concerning Gayle's case on May 3, 1990. *See* Plaintiffs' Ex. 7H.

chapter 93A by letter dated May 14, 1990. *See* Defendant's Ex. G(7). Fidelity did not respond to the 93A demand until August 29, 1990, when it offered $7,500 in settlement of Paul's claims and $18,000 in settlement of Gayle's claims. *See* Plaintiffs' Ex. 7J. Because Fidelity did not respond to the 93A demand within thirty days, the Brandleys filed suit in Suffolk Superior Court on July 24, 1990 against Fidelity, the driver of the pick-up, and his employer.

The Brandleys' claims for damages against the driver and his employer were settled for $84,000 on the morning of the first day of trial in October 1991. The remaining defendant, Fidelity (a Maryland corporation), availed itself of diversity jurisdiction to remove the action to this court for resolution of the remaining count of the complaint, Count IV, which alleges that Fidelity engaged in unfair claims settlement practices in contravention of the Massachusetts Consumer Protection Act, Mass.Gen.L. ch. 93A, and the Unfair Claims Settlement Practices Act, Mass.Gen.L. ch. 176D. Both parties now move for summary judgment.

## II. LEGAL STANDARD

As the First Circuit recently noted, there is little point in "attempting to reinvent so [familiar and] serviceable a wheel" as the summary judgment standard. *In Re Newport Plaza Assocs., L.P.*, 985 F.2d 640, 643 (1st Cir.1993). That standard is set out in Rule 56(c), Fed.R.Civ.P., and provides that summary judgment shall be rendered if "there is no genuine issue as to any material fact." The parties in this case have filed cross motions for summary judgment and this court finds that no material fact is genuinely disputed. The only issues to be decided are legal issues and therefore this case is properly decided by summary judgment. The material facts established by the pleadings demonstrate that the Brandleys are entitled to judgment as a matter of law.

## III. DISCUSSION

### A. Liability

Chapter 176D, the Unfair Claims Settlement Practices Act ("the Act"), states that the following are unfair practices:

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; . . .

(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

Mass.Gen.L. ch. 176D, § 3(9). An insurer's violation of any of these obligations expressly violates the Consumer Protection Act ("chapter 93A"), Mass.Gen.L. ch. 93A, § 9(1).

The Brandleys argue that Fidelity violated subsection (b) by taking almost two years to respond to the initial notice of their claims, by taking two to five months to communicate even the most minimal response to their November and December 1989 settlement demands, and by taking three months to respond to their 93A demand letter. They argue that because liability was never in question, Fidelity violated subsection (f) by failing to make an equitable offer of settlement by December 1989, by which time it had received demands for settlement of both Paul and Gayle's claims. And finally, the Brandleys argue that Fidelity violated subsection (g) by offering only $7,500 in settlement of Paul's claims and $18,000 in settlement of Gayle's claims, less than one-third the amount of the ultimate settlement.

#### 1. Subsection (b)

■ Fidelity does not dispute that it received the Brandleys' initial notice of claim dated April 29, 1988. *See* Fidelity's Memorandum in Support of its Motion for Summary Judgment at 3–4. Fidelity's usual practice is to respond to such initial communications by sending a form letter indicating the claim number and claims adjuster assigned to the claim. *See* Deposition of Albert Jones at 71–72; Plaintiffs' Ex. 7F. Despite the fact that Fidelity's usual practice is to respond to initial notices within two weeks, *see* Jones Deposition at 73, Fidelity did not

respond to the Brandleys' initial notice until February 27, 1990 (Paul's claim) and May 3, 1990 (Gayle's claim).

Fidelity's extreme delay in attending to this matter is wholly unexplained. However, because it does not appear that the Brandleys made any attempt to follow up on their initial communication, despite their letter's assertion of an intention to do so, I decline to hold that Fidelity's delay in responding to this letter violated subsection (b). The delay does not appear to have hampered the Brandleys, who were content to wait until November 1989 to take further action. Indeed, the Brandleys do not argue that they were prejudiced by Fidelity's failure to respond. *See Memorandum in Support of Plaintiffs' Motion for Summary Judgment at 10; Deposition of Hans R. Hailey at 42* (indicating that plaintiffs' attorney has no idea why his office failed to follow up on the initial communication). Where there was neither prejudice to nor any follow-up by plaintiffs, it would seem excessive to penalize Fidelity for its failure, though extended, to respond to a single, isolated missive. This is especially so given that once the Brandleys were ready to pursue their claim, their attorney was able simply to call Fidelity and to obtain Paul's claim number. *See* Defendant's Ex. G(2) (second letter dated November 10, 1989); Ex. G(7) (letter dated May 14, 1990).

 I take a different view, however, of Fidelity's failure to respond to the Brandleys' second set of communications. Whereas the Brandleys' initial notice of claim was merely pro forma, the demand letters dated November 10 and December 8, 1989 detailed the plaintiffs' injuries, included copies of medical bills and relevant police reports, indicated estimated settlement values, discussed pertinent caselaw, and unambiguously left the ball in Fidelity's court. There was no response to these letters until February and May

1990, when Fidelity did no more than give notice of the adjuster and reference numbers assigned to the claims. The Brandleys' attorney attempted to follow up on these letters on numerous occasions, *see* Defendant's Ex. G(7) at two, but was unable to elicit any meaningful action from Fidelity.[2] Even the submission of a 93A demand letter on May 14, 1990 failed to elicit a response within the generally recognized thirty-day response period.[3] Because none of these facts are disputed, I find that the Brandleys are entitled to summary judgment on the question of Fidelity's violation of subsection (b).

### 2. Subsection (f)

 Subsection (f) is violated if an insurer fails to effectuate a "prompt, fair, and equitable" settlement of a claim in which liability has become "reasonably clear." The Brandleys argue, Fidelity does not dispute, and this court finds that liability in this matter was clear almost from the time of the accident and certainly by November or December 1989 when the plaintiffs submitted their demand letters. Fidelity made no offer, fair or otherwise, on either plaintiff's claim until August 1990. The only excuse Fidelity offers for its eight- to nine-month delay is that the Brandleys' initial demand was large. *See* Fidelity's Memorandum in Support of its Motion for Summary Judgment at 13 (stating that "[i]n May of 1990, a mere five months after the initial demand of $1.04 million dollars, when [Fidelity] had not capitulated to the plaintiffs' demand, plaintiffs' counsel forwarded a Ch. 93A demand letter and a demand for $990,000").[4] The size of the plaintiffs' initial demand cannot serve as an excuse for delay in opening negotiations. Thus, Fidelity's failure to act promptly violated subsection (f) as well as subsection (b).

Moreover, the Brandleys argue that Fidelity's offer, when it eventually materialized, was not "equitable," as required by subsec-

---

**2.** The claims adjuster repeatedly claimed to be unable to locate the files and to have lost the Brandleys' correspondence. *See* Defendant's Ex. G(7) at two.

**3.** There is no statutory or case law definition of "prompt" for purposes of section 3(9)(b) or (f) of the Unfair Claims Settlement Practices Act. However, section 9(3) of the Massachusetts Con-

sumer Protection Act, Mass.Gen.L. ch. 93A, § 9(3), provides that if the recipient of a 93A demand letter fails to make a reasonable offer of settlement within thirty days, it is exposed to 93A damages. Response within thirty days is therefore generally considered prompt.

**4.** In fact, not only had Fidelity not capitulated, it had *not even responded.*

tion (f). The Brandleys' 93A demand letter stated that their attorney believed that "a fair settlement of Mr. Brandley's claim would be in the amount of $90,000.00 and that a fair settlement value of Gayle's claim is $900,-000...." *See* Defendant's Ex. G(7) at four. The combined value of $990,000 represented a decrease of $50,000 from the Brandleys' initial demand of $1.04 million (Paul's $50,000 claim for loss of consortium is not mentioned in the 93A demand letter). Fidelity's response of August 29, 1990 offered $7,500 on Paul's claim and $18,000 on Gayle's claim for a total of $25,500. *See* Defendant's Ex. G(9). The two claims together ultimately settled for a lump sum of $84,000 (which was not allocated between the two plaintiffs).

▇ The Brandleys' position is that an offer of less than one-third of the amount ultimately recovered is not "reasonable" or "equitable."[5] In light of prior holdings that "[t]he standard for examination of the adequacy of a response to a demand for relief under [chapter 93A] is whether, in the circumstances, and in light of the complainant's demands, the offer is reasonable," *Calimlim v. Foreign Car Center, Inc.*, 392 Mass. 228, 234, 467 N.E.2d 443 (1984) (citation omitted), this court declines to adopt a rule holding that an offer of less than one-third of the ultimate recovery is never equitable. *See Capp Homes v. Duarte*, 617 F.2d 900, 903 (1st Cir.1980) (stating that "the reasonableness of the tender of settlement [is] a separate matter from the eventual verdict"). The inquiry should focus instead on the circumstances surrounding the offer.

The circumstances here are, on the one hand, that Fidelity delayed making an offer

until *after* the Brandleys had been forced to resort to litigation. Furthermore, Fidelity made a total offer of $25,500 even though it was in possession of all the information which would later lead its counsel to conclude that a jury verdict would most likely range from a low of $57,500 to a high of $110,000. *See* note 5, *supra*. On the other hand, the Brandleys demanded $990,000. While Fidelity may have been put off by this clearly excessive demand, and while Fidelity may have expected, as it claims, to engage in extensive negotiations, it must be remembered that the Act is directed to insurers and not to plaintiffs' attorneys. The Brandleys' extravagance alone is insufficient to offset the dilatory, unresponsive, and even cavalier manner in which Fidelity treated these claims from the moment it received the Brandleys' first correspondence.[6] I find that Fidelity's low-ball offer was yet another link in this chain of unresponsive behavior, and thus that the offer was unfair and inequitable as well as late.

### 3. Subsection (g)

▇ Subsection (g) is violated if an insurer compels "insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." However, the Supreme Judicial Court of Massachusetts has clearly stated that "[t]his language creates no rights in persons other than the insured." *Jacobs v. Town Clerk of Arlington*, 402 Mass. 824, 829, 525 N.E.2d 658 (1988) (citing language in other subsections which makes reference to "claimants"). As the insured in this case is the employer of the driver of the

---

**5.** Fidelity's offer was all the more unreasonable, the Brandleys argue, given that by December 1989 Fidelity had all the information necessary to evaluate their claims and to "conclude that the probable jury verdicts for Gayle's claims would be in the range of $50,000 to $100,000 and for Paul's claims, in the range of $7,500 to $10,000." Plaintiffs' Opposition to Defendant's Motion for Summary Judgment at 4. (Fidelity actually received these estimates, apparently from defense counsel, on September 13, 1991. *See* Jones Deposition at 138–41.) Fidelity does not appear to dispute this point.

**6.** Fidelity argues that the lowness of its offer should also be considered in light of opposing counsel's hesitancy to settle the action. *See* Fi-

delity's Memorandum in Support of its Motion for Summary Judgment at 12. Even if this were a convincing rationale, it appears that the *earliest* conversation in which plaintiffs' counsel expressed this hesitancy occurred in June 1991, *see* Deposition of Hans R. Hailey at 94–95, long after Fidelity's offer was made and subsequent to numerous prior conversations in which plaintiffs' demand was acknowledged to be negotiable. *See id.* at 92–94. However, this is not a convincing rationale. I reject Fidelity's argument that it was prevented from carrying out its statutory obligation to make a prompt and equitable settlement offer by the mere fact that it speculated that the Brandleys would reject that offer.

pick-up truck, the Brandleys may not assert claims under this subsection.[7]

### B. Damages

Because I have found that Fidelity violated subsections (b) and (f) of the Act, I must now address the question of damages. Subsection (3) of chapter 93A, section 9, provides that damages for 93A violations shall be "in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation" or was done in bad faith. Mass. Gen.L. ch. 93A, § 9(3). Subsection (3) was amended in 1989 by chapter 580, which added a sentence stating that

the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim.

*Id.* (added by St.1989, ch. 580, § 1).

Fidelity argues that even if its conduct violated the Act, the plaintiffs' claim for damages must fail because they have not established that they suffered any additional harm or "independent loss proximately caused by [Fidelity's] conduct."[8] Fidelity's Memorandum in Support of its Motion for Summary Judgment at 16. The plaintiffs, referring to the language of chapter 580, argue that they do not have to show that Fidelity's actions caused them any independent loss and that their actual damages are $84,000, the amount of the settlement for the underlying claim, plus lost interest ($18,480, figured at one percent per month for the twenty-two months between December 1989 and October 1991).[9]

At the time of its passage, chapter 580 created significant controversy precisely because practitioners understood it to eliminate the requirement of causation in awarding damages against insurers in chapter 93A actions. That is, chapter 580 was understood to mandate that the amount of the judgment on the underlying insurance claim be included in "actual damages" for chapter 93A purposes. *See* John D. Boyle, The Elimination of Causation in 93A Actions Against Insur-

---

7. I am puzzled by Fidelity's failure to make this argument on its own behalf. However, the *Jacobs* case is unambiguous and appears to be good law, and there is no doubt that the Brandleys are not the insureds, so I have little hesitancy in raising this point *sua sponte.*

8. Fidelity cites *Kerlinsky v. Fidelity & Deposit Co.,* 690 F.Supp. 1112, 1120 (D.Mass.1987), *aff'd,* 843 F.2d 1383 (1st Cir.1988), for the proposition that even if the defendant committed an unfair act, the plaintiff must still show that the unfair act caused a loss of money or property. However, this case refers to section 11 of chapter 93A, applicable to plaintiffs engaged in the conduct of trades or businesses, and not to section 9 of chapter 93A, applicable to the plaintiffs here. The requirement that section 9 plaintiffs have suffered a loss of money or property was deleted in 1979. *See Haddad v. Gonzalez,* 410 Mass. 855, 865 (1991). Therefore, *Kerlinsky* is irrelevant to the case at hand.

Fidelity also cites *Chub v. Electric Ins. Co.,* 17 Mass.App.Ct. 61, 455 N.E.2d 646 (1983), for the proposition that a section 9 claimant must be "adversely affected" by an unfair claims settlement practice in order to recover under chapter 93A. However, in *Chub,* unlike in this case, the defendant insurance company was not liable for the underlying injury. Therefore, *Chub* seems to stand for the proposition that where an insurer is not liable for the underlying claim, the insurer cannot engage in unfair claims settlement practices. (In other words, if there is no judgment against or payment by the insurer on the insurance policy, there would be no basis for a claim of unfair settlement practices.) Regardless of the merits of this position, the holding of *Chub* is not applicable to this case. (Furthermore, *Chub* was decided prior to the passage of chapter 580.)

The case upon which *Chub* relies, *Van Dyke v. St. Paul Fire & Marine Ins. Co.,* 388 Mass. 671, 676–78, 448 N.E.2d 357 (1983), throws light on the meaning of the phrase "adversely affected." In *Van Dyke,* the court held that even if the insurer violated chapter 176D by failing to conduct a reasonable investigation before denying plaintiffs' claim, the plaintiffs were not adversely affected because if the insurer had conducted a proper investigation, it would have concluded that liability on the underlying claim was not reasonably clear and thus would have been warranted in rejecting plaintiffs' settlement demands. This, again, is not our case. None of these cases addresses the question of whether the Brandleys must show that they suffered harm as a direct result of Fidelity's unfair settlement practices in order to recover more than nominal damages.

9. Fidelity has not contested the amount of interest to which the plaintiffs are entitled.

ers, Boston B.J., Jan./Feb.1991, at 14.[10] The language of the amendment itself seems clear enough to support this understanding; moreover, as Boyle notes, the amendment's sponsor explicitly stated that chapter 580 was meant to "correct" the case of *Wallace v. American Mfrs. Mutual Ins. Co.*, 22 Mass. App.Ct. 938, 494 N.E.2d 35 (1986). *See* Boyle at 14.

In *Wallace*, the Appeals Court reversed the Superior Court, holding that the "actual damage" recoverable under chapter 93A was not the amount of the insurance coverage wrongfully denied, but rather lost interest and related items. *See Wallace*, 22 Mass. App.Ct. at 939, 494 N.E.2d 35 ("[F]or recovery under § 9 [of chapter 93A] there must be proof that the failure to settle caused actual separate injury to Wallace."). The Appeals Court stated bluntly that "[a] plaintiff still must show a *causal connection* between the insurer's [unfair] *failure to settle* ... and the *injury* and loss for which recovery is sought." *Id.* at 940, 494 N.E.2d 35 (emphasis in original). As unpopular as the legislative reversal of this holding may be, it is unambiguous and binding on this court.

Boyle gives an example to clarify how chapter 580 works. An insured who recovers $80,000 in contract from its insurer on an insured property loss and who then receives a chapter 93A judgment would recover "another $80,000 on his 93A judgment plus attorney's fees and multiples of $80,000 if there was a willful or knowing violation of chapter 93A." Boyle at 14–15. However, Boyle dislikes this outcome because

> [t]o recover an additional $80,000 for the 93A claim does not compensate the insured for actual damages caused by the insurer. That figure has no logical relationship to the conduct of the insurer or to the damages caused by the conduct of the insurer. $80,000 is simply the fortuitous amount of the [property] loss that the insured is entitled to recover under his insurance contract.

*Id.* at 15. Boyle characterizes his example as a "liberal construction" of chapter 580. However, this court would go further: this seems the only correct construction of the amendment, given its plain language and its sponsor's statement that he proposed it in "reaction to" *Wallace.*[11] *See id.* at 14.

I am fortified in this conclusion by *Bonofiglio v. Commercial Union Ins. Co.*, 411 Mass. 31, 576 N.E.2d 680 (1991), a case decided after the implementation of chapter 580. *Bonofiglio* held that an arbitrator's award of $283,000 on personal injury claims arising out of a motor vehicle accident "certainly arises out of the occurrence underlying the c. 93A action...." *Id.* at 37, 576 N.E.2d 680. The clear implication of this statement is that the award should be included as an item of "actual damages" under chapter 580. Ultimately, however, the *Bonofiglio* court found that an arbitrator's award "is not a 'judgment' within the meaning of this provision of the statute," *id.*, and therefore that the $283,000 award was not subject to the multiplier provision of chapter 93A.[12]

10. The Brandleys' attorney has also published on this subject. He denies that chapter 580 "removes the causation requirement." However, the apparent disagreement between Boyle and Hailey is purely semantic. Hailey agrees with Boyle that chapter 580 provides that "if an insurer wrongfully fails to pay a claim, the amount of that claim is an item of damage caused by the wrongful conduct and should serve as the basis ... for multiple damages." Hans R. Hailey, New Incentive for Insurers to Settle Claims Reasonably and Promptly, Boston B.J., Sept./Oct. 1990, at 16, 18. Hailey merely points out that because the insurer has compelled the claimant to litigate in order to recover, the insurer has "caused" the litigation, and therefore that causation in that sense is still required. Boyle, on the other hand, contends that the causation requirement has been eliminated because there is no logical relation between the amount of the judgment awarded on the underlying claim and the damages awarded due to an insurer's unfair settlement practices.

11. If, however, Boyle is suggesting that the insured in his example is entitled to multiples of $80,000 *in addition to* actual damages of $80,000 (on top of his original $80,000 contract recovery on the property loss), this court does not endorse that reading of chapter 580. There is no indication that chapter 580 envisions adding the actual damages figure to the product of double or treble that figure in order to arrive at the total 93A award in situations where the underlying judgment in contract has already been paid.

12. As an aside, this is an unfortunate loophole in chapter 580 which will have the effect of discouraging plaintiffs from agreeing to arbitrate their underlying insurance claims.

Fidelity's citation of *Cohen v. Liberty Mutual Ins. Co*, No. 91–0381–D (Suffolk Sup.Ct., Nov. 24, 1992), in support of its argument that the Brandleys cannot recover unless they show "independent loss" muddies the water considerably. To summarize *Cohen* briefly, the plaintiff, a claimant, sued under chapters 93A and 176D. He had already obtained a default judgment of $90,000 against Liberty on his underlying claim, but the judgment had never been satisfied. Months after Cohen filed the 93A action, Liberty offered Cohen the $20,000 limit on its insurance policy, which Cohen rejected. The court found that Liberty had violated chapter 176D, § 3(9)(f), and, by extension, chapter 93A, by failing to effectuate a prompt settlement of a claim in which liability had become reasonably clear.

Cohen then argued that he was entitled to multiple damages, and that the amount of the judgment *in the default action* ($90,000) should be the basis for the multiplication. The court disagreed, holding that Cohen's "actual damages" were the $20,000 limit of the policy and the interest on that amount. Liberty could not be held responsible for the full $90,000 default judgment, the court reasoned, because at the time that judgment was entered, Liberty had a reasonable belief that it was not the insurer of the vehicle which had injured Cohen, and thus was not then in violation of chapter 93A. *See Cohen*, slip op. at 10. Therefore, Cohen was entitled to multiples of $20,000, not of $90,000.

Unfortunately, in the course of explaining why Cohen was not entitled to multiples of the "excess judgment" (the amount between $20,000 and $90,000), the court engaged in some rewriting of chapter 580 as well as a discussion of "causal connections" which Fidelity has quoted out of context.

First, it is important to note that although there is ambiguous language in the *Cohen* opinion, including a misstatement of the holding of *Bonofiglio*, the court was perfectly clear that the plaintiff's "actual damages"

were the amount of the limit of his policy coverage ($20,000) plus interest on $20,000. *See id.* at 10, 13. This is the amount which was trebled.

In the course of arriving at this decision, however, the *Cohen* court rewrote chapter 580 as follows.

[T]he amount of actual damages to be multiplied by the court shall be the amount of the judgment on all [93A] claims arising out of the same [93A action] and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim.

*Cohen*, slip op. at 11 (bracketed material added by *Cohen* court). The court's rewriting of chapter 580 may have made sense in the context of *Cohen*, but it does not make sense in the Brandleys' case.

In *Cohen*, the default judgment was obtained before Liberty engaged in any unfair practices, and hence Liberty was not responsible for the fact that Cohen had to file that particular suit. Therefore, it would have been unjustifiable to consider the "excess judgment" part of Cohen's "actual damages." In the Brandleys' case, on the other hand, the settlement occurred only after Fidelity had violated chapter 176D, forcing the Brandleys to file this suit in order to recover on their underlying claim.[13]

Furthermore, the addition of the bracketed material renders nonsensical all the words appearing after the second bracket. The chapter's drafters must have intended the phrase "underlying transaction or occurrence" to refer to the event which initially triggered coverage under an insurance policy (a motor vehicle accident, fire, or theft, for example), because those are the types of occurrences for which "insurance coverage available in payment of the claim" may or may not exist. The most logical explanation for the phrase "regardless of the existence or

---

13. This distinction seems to be what Hailey has in mind when he states that chapter 580 "does not remove the causation requirement." Hailey, *supra* note 10, at 18 (stating also that "the amount of the judgment recovered on the underlying claim will be the basis for multiple damages, *provided that the unlawful conduct by the insured* [sic, should read "insurer"] *compelled the claimant to obtain a judgment in the amount of the claim that should have been paid*") (emphasis in original).

nonexistence of insurance coverage" is that it is intended to deal with a situation such as *Chub*, 17 Mass.App.Ct. 61, 455 N.E.2d 646 (discussed *supra* note 8), in which the court held that a plaintiff could not recover for unfair settlement practices against an insurer which was not responsible for the underlying coverage. These phrases are rendered nugatory by the addition of the bracketed material, at least given a factual situation like the Brandleys'.

The *Cohen* court also made reference to a continuing "requirement that the plaintiff show a causal connection between the defendant's ch. 93A violation and the actual damages for which he [seeks] recovery." *Cohen*, slip op. at 11 (footnote omitted). However, the context of this statement makes clear that the court understood "causal connection" in Hailey's sense, not in Boyle's.[14] *See Cohen*, slip op. at 11–12 (stating that chapter 580 "sought to expand prior court determinations that the foreseeable loss resulting from a c. 93A violation ... was only the loss of the 'use' of the money to which the plaintiff was entitled") & n. 5. Properly understood, *Cohen* is not inconsistent with this court's reading of chapter 580.

█ Thus, I read chapter 580 to mandate that the amount of the underlying judgment be included as an item of "actual damages." The Brandleys' "actual damages" therefore include the $84,000 settlement [15] as well as lost interest.[16]

█ The Brandleys argue that their actual damages should be trebled. As noted above, Fidelity failed to respond to the plaintiffs' demand letters in a timely manner; the plaintiffs sent a 93A letter at least thirty days prior to suit; and Fidelity's settlement offer was unreasonable. The only question remaining is whether Fidelity's failures to respond to the demands and to make a reasonable offer were "willful or knowing violation[s]" of chapter 93A.

The Supreme Judicial Court has held that the multiplier provision "is directed against callous and intentional violations of the law...." *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 627, 382 N.E.2d 1065 (1978) (citation omitted). Fidelity's failure to respond to the demand letters dated November 10 and December 8, 1989 was callous and intentional in the extreme in that Fidelity cavalierly ignored numerous oral and written communications by plaintiffs' counsel. Given that plaintiffs' 93A demand letter clearly set forth the penalties for failure to respond, Fidelity's delay in making a settlement offer pursuant to that letter was also willful and knowing. On the other hand, although I have held that Fidelity's eventual settlement offer was unreasonably low, I am not convinced that it was low enough to constitute a knowing or willful violation of chapter 93A, as distinct from an unreasonable but good faith estimate of the plaintiffs' damages. Therefore, I impose double rather than treble damages. The amount to be doubled is the sum of the $84,000 settlement and $18,480 in lost interest, or $102,480.

Section 9(4) of chapter 93A provides for the recovery of reasonable attorney's fees and costs. *See* Mass.Gen.L. ch. 93A, § 9(4). The Brandleys argue that they are entitled to their full fees and associated costs under this provision. They are hereby directed to submit for consideration an affidavit detailing such fees and costs.

One final note is in order before bringing this lengthy memorandum to a close. This

---

**14.** *See supra* note 10.

**15.** This court assumes, because it was not disputed, that a settlement is a "judgment" for purposes of chapter 93A. *Compare Bonofiglio*, 411 Mass. at 37–38, 576 N.E.2d 680 (holding that an arbitrator's award is not a "judgment") *with* Rule 54(a)(2), Mass.R.Civ.P. (stating that a "judgment" may be entered pursuant to an agreement under Rule 58).

The court is not persuaded by Fidelity's argument that the fact that its counsel omitted to sign the agreement for judgment makes that judgment defective as a matter of law and thus defeats plaintiffs' recovery. Nor does it seem crucial

under these circumstances that the agreement for judgment was never made final pursuant to the provisions of Rule 54(b), Mass.R.Civ.P., especially given that Fidelity does not argue that it was in any way prejudiced by the failure to comport with this requirement. Nor is there any significance to the fact that there is a combined judgment for both plaintiffs.

**16.** Because it has not been called upon to do so, this court expresses no opinion on the question of whether attorney's fees might be considered a component of "actual damages."

case has consumed the resources of both state and federal courts and may yet require further appellate review. The focus of the storm is a statute which was promulgated in an attempt to provide claimants with recourse if the effective, efficient, and fair resolution of their claims was not pursued timely by insurers. I have already pointed out Fidelity's violations of that statute and assessed a penalty, but it should be understood that the plaintiffs are not entirely blameless. Their attorney assisted in creating this situation by demanding an excessively large settlement. Plaintiffs' counsel stated at his deposition that "[b]ecause a carrier is regulated by the general laws [and] a plaintiff is not," plaintiffs' attorneys are not required to play by the same rules as insurance companies. Hailey Deposition at 137. While this may be the literal import of the statute, one may reasonably ask what the outcome would have been had both sides followed the letter and spirit of the Massachusetts Unfair Claims Settlement Practices Act. Had the plaintiffs' claims been more in line with their injuries, would that have evoked a more prompt and reasonable response from Fidelity?

The record in this case shows the following. The plaintiffs' case was settled for less than one-tenth of the demand "on the courthouse steps." The case was settled after the wise intercession of Superior Court Justice Cratsley, who suggested a settlement of $75,000. The plaintiffs received compensation *for their personal injuries* in a clear liability case 3½ years after the accident. The only surviving claim after settlement, a claim which involved only state law, was promptly removed by the defendant because complete diversity had finally been achieved. That claim was resolved, at least at this level, five years after the accident. The record is not an impressive one.

In accordance with the above, the defendant's motion for summary judgment is *DENIED*. The plaintiffs' motion for summary judgment is *ALLOWED*.

SO ORDERED.