Butler, J.
Plaintiffs filed this complaint seeking damages for alleged breach of contract, fraud, negligent misrepresentation, and violations of G.L.c. 93A, §11.
Defendants Thyssen Elevator Company[1] and John J. DeMartino filed the instant motion to dismiss the complaint as to them pursuant to Mass.R.Civ.P. 12(b)(6).
Plaintiffs oppose Defendants’ motion.
For the reasons stated infra, the motion will be ALLOWED in part and DENIED in part.
BACKGROUND[2]
Robert F. Driscoll (Driscoll) was the president of F.S. Payne Elevator Company (Payne). On November 30, 1987, Driscoll terminated William F. King (King) who was then Payne’s vice president of manufacturing and a Payne stockholder.
A. The King Action[3]
On June 28, 1990, King brought a complaint (King action) for wrongful termination naming Payne, Driscoll and others.[4] The King action was brought in four counts.[5] Count I alleged that Payne terminated King’s employment in violation of public policy and the implied covenant of good faith and fair dealing; Count II alleged that Driscoll and Marchant intentionally interfered with Kings advantageous relations with Payne; and Count III alleged that Driscoll and March-ant breached their duty to King as a fellow shareholder in Payne.
On September 30, 1992, after a bench trial, the trial court issued its Findings of Fact, Rulings of Law, and Order (Liability Decision). The court (Volterra, J.) determined that Payne was liable as to Count I, Driscoll and Marchant were liable as to Counts II and III. The Court found, inter alia, that King’s termination was motivated on the part of Driscoll and Marchant by “personal self gain, greed, and malice" without any legitimate business interest. The court further concluded that in firing King, Driscoll and Marchant acted in bad faith and had breached various duties owed to King as a fellow shareholder and employee. The court deferred assessment of damages pending submission of a proposed judgment by King.
On August 11, 1993, in its Findings, Conclusions of Law, and Final Order for Judgment on Damages pursuant to Mass.Civ.P. 52 (Initial Judgment), the court reiterated its previous specific findings that Driscoll’s and Marchant’s actions were unrelated to any legitimate corporate interest and were willful and malicious.
On August 24, 1993, in its Judgment After Findings, the court ruled in favor of King against Payne on Count I, Driscoll on Counts II and III, and Marchant on Counts II and III. As a consequence of the Judgment *17 After Findings, all named defendants were joint and severally liable for $528,800,.89 (plus interest). The Court assessed further damages against Driscoll in the amount of $23,516.64 (plus interest) and against Marchant in the amount of $1,814.20 (plus interest).
On September 7, 1993, the Court embodied its Judgment After Findings in a Final Judgment.
On September 14, 1993, Attorney Richard Neumeier (Neumeier)[6] filed a Notice of Appeal on behalf of Payne, Driscoll, Marchant, and Martin. Neumeier’s application for direct appellate review was granted and the appeal was heard by the Supreme Judicial Court (SJC) on April 4, 1994.
On August 11, 1994, the SJC issued its decision (SJC Decision I). The SJC reversed so much of the trial court’s judgment on Count I as against Payne for wrongful termination against public policy, and remanded for further proceedings that portion of the Final Judgment on Count I that found Payne to have breached the implied covenant of good faith and fair dealing. SJC Decision I also reversed the trial court’s Final Judgment on Count II and affirmed the Final Judgment as to Count III (Driscoll’s and Marchant’s breach of the duly of utmost good faith and loyalty owed to King as a shareholder).
Following remand, Neumeier, on behalf of Payne, Driscoll and Marchant, argued that the proper method of damages for Count III should be limited to disgorgement damages. On Januaiy 25, 1995, the trial court (Vblterra, J.) issued its Memorandum and Order for Judgment After Rescript (Order). In its order, the court accepted Neumeier’s argument as to Count III, thereby limiting the damages assessed against Driscoll to $23,516.64 (plus interest) and against Marchant to $1,814.20 (plus interest). Furthermore, the court dismissed Count I against Payne on the basis that King had not proven damages against Payne. Thus, the trial court’s order left standing judgments for King only on Count III, against Driscoll and Marchant. All parties appealed the trial court’s revised order.
On December 12, 1996, the SJC issued its decision (SJC Decision II) 424 Mass. 1 (1996), affirming the trial court’s dismissal of Count I, but it ruled that the court impermissibly recalculated damages under Count III. The SJC therefore directed the trial court to enter judgment for King on Count III in accordance with the Final Judgment issued in September 1993. The effect of the decision was to leave standing the $528,800.89 judgment plus interest against Driscoll and Marchant but not Payne.
On December 24, 1996, Driscoll, by new counsel, filed a petition for a rehearing with the SJC. By then Neumeier had formally withdrawn as Driscoll’s counsel in the King action, but continued to represent Marchant. On Marchant’s behalf Neumeier also filed a petition for a rehearing. Both petitions were denied.
On January 14, 1997, a Writ of Attachment against Driscoll’s residence in the amount of $1,021,065.77 was issued in the King action.
On May 7, 1997, the trial court entered a Final Judgment After Rescript (1997 Judgment) in which it entered judgment in favor of King against Driscoll in the amount of $1,021,065.77 and against Marchant in the amount of $979,968.31. On June 5, 1997, Writs of Execution were issued in the King action against Driscoll in the amount of $1,031,547.89 and against Marchant in the amount of $990,039.45.
On June 11, 1997, Driscoll made written demand upon Payne to indemnify him and pay the judgment that had been entered against him in the King action. On June 16, Payne rejected Driscoll’s demand.
Throughout the course of the King action, Driscoll, Marchant, and Payne maintained a joint defense and were each represented by Attorney Neumeier. Driscoll and Marchant contend that Payne, DeMartino and Neumeier made oral promises to indemnify all named defendants in the King action and that Payne insisted on maintaining a “unified” defense in the King action.
B. The Driscoll and Marchant Action
Driscoll and Marchant bring the above captioned complaint in twenty counts against Payne, Payne’s current president John J. DeMartino (DeMartino), and Payne’s legal counsel Richard L. Neumeier. As against the defendants Payne and DeMartino, Driscoll and Marchant seek damages for, inter alia, alleged breach of contract, fraud, negligent misrepresentation, and violations of G.L.c. 93A, §11, the Consumer Protection Act. Payne and DeMartino bring the instant motion to dismiss Counts I, II, III, IV, V, VII, VIII, XI, XII, XIII, XIV, XV, XVII, and XVIII, the counts for breach of contract, fraud, negligent misrepresentation, promissory estoppel, and violations of G.L.c. 93A as against Payne and DeMartino, thereby leaving intact only those counts alleged against attorney Richard L. Neumeier for malpractice, misrepresentation, and fraud.
DISCUSSION
Standard of Review
Under Mass.R.Civ.P. 12(b)(6), “a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Also, “tíre allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiffs favor, are to be taken as true.” Nader v. Citron, supra at 98.
A. Contentions of the Parties
Driscoll and Marchant contend that throughout the litigation and appeal of the King action, Payne, Payne’s president, DeMartino, and Payne’s attorney, Neumeier, made express oral representations that Payne *18 would indemnify all defendants against any judgment awarded to King.
Driscoll and Marchant further contend that they are entitled to indemnification based on theories of fraud, misrepresentation and promissory estoppel because they reasonably relied on Payne’s alleged promise that if they maintained a unified defense with Payne they would be indemnified. Finally, Driscoll and Marchant allege unfair and deceptive business practices against Payne and are seeking damages under G.L.c. 93A.
Payne and DeMartino contend that Massachusetts law, G.L.c. 156B, §67, prohibits indemnification of corporate officers and directors who are adjudicated to have acted in bad faith. Moreover, Payne maintains that G.L.c. 93A is not available to plaintiffs as a means of relief because the conduct alleged by plaintiffs is outside the ambit of that statute.
B.The Applicability of G.L.c. 156B, §67
The Commonwealth of Massachusetts has enacted a statutory scheme establishing the right to and the limits of indemnification for corporate officers and directors. G.L.c. 156B, §67. In so doing, the legislature has established the parameters within which a corporate officer or director may conduct himself and still remain indemnified by the corporate entity. The statute, however, prohibits a corporation from indemnifying any officer or director who is adjudicated in any proceeding not to have acted in good faith.[7] The trial court (Volterra, J.) expressly determined that both Driscoll and Marchant had not acted in good faith. Therefore, insofar as Driscoll and Marchant are concerned, there remains a statutory bar against their indemnification by Payne. For that reason, Payne has the better of the argument in regard to its statutory obligation to indemnify Driscoll in the King action.
C.Oral Promise to Indemnify
Next, Driscoll and Marchant contend that Payne and DeMartino made an oral contract with Driscoll and Marchant to indemnify them in the King action.
The well-settled principle of law in Massachusetts is, that no one knowingly participating in a transaction intended to accomplish a purpose forbidden by law, can bring an action for any cause directly connected with that illegality. Foster v. Thurston, 65 Mass. 322, 323 (1853).
The question then turns on whether Driscoll and Marchant knew of the illegality of the promise that Payne would indemnify the defendants in the King action. Becoming an officer or director is not mandatory, so those who become officers and directors are presumed to know the laws governing them. See, Old Colony Boot & Shoe Co. v. Parker, Sampson-Adams Co., 183 Mass. 557, 565 (1903). Presumptions are rebut-table, however. “A presumption is rebuttable, however, and may be rebutted by evidence warranting a finding contrary to the presumed fact.” Paul J. Liacos, Massachusetts Evidence §5.8.5 (6th ed. 1994 & Supp. (1998); see also Jacobs v. Town of Arlington, 402 Mass. 824, 827-287 (1988). “A presumption ordinarily is not evidence, but is a rule about evidence. (Citations omitted.) ‘Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When those appear, presumptions disappear.’ Lincoln v. French, 105 U.S. 614, 617 (1881). The presumption ... is merely like numerous other presumptions. It stands only until the facts are shown.” Duggan v. Bay State St. Ry. Co., 230 Mass. 370, 378 (1918). In this case Driscoll and Marchant have alleged facts that raise a substantial question as to their knowledge of the law and the reasonableness of their reliance upon the oral promises to indemnify.
“The question whether a party’s reliance on a promise by another is reasonable is often a question of fact, but in an appropriate case can present an issue of law. This is especially so when the parties involved are of relatively equal knowledge and sophistication.” Cataldo Ambulance Service, Inc. v. Chelsea, 426 Mass. 383, 387 (1998). In the case at bar, however, and especially at this juncture of the lawsuit, this court determines that the issue of reasonable reliance has been sufficiently pled to avoid dismissal.
In support of that determination, this court relies, by analogy, on the same elements necessary to establish an advice-of-counsel defense. Like the advice-of-counsel defense, Driscoll and Marchant must show that in relying on the representations: (1) they were acting in good faith in the belief that they had good cause for their action and did not seek the advice or opinion in order to shelter themselves; (2) they made a full and honest disclosure of all the material facts within their knowledge; (3) they were doubtful of their rights; (4) they had reason to know that the counsel was competent; (5) they honestly complied with their counsel’s advice; and (6) their counsel is of such training and experience in that he is able to exercise judgment in such matters. See G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 275 (1991).
Consequently, Driscoll and Marchant are not barred as a matter of law from pressing their claims under the counts in which they claim breach of contract (I, XI) fraud (II, VII, XII, XVII) negligent misrepresentation (III, VIII, XIII, XVIII) and promissory estoppel (IV, XIV) against the defendants (except Neumeier).
D.Chapter 93A, §11 Claims
Finally, Driscoll and Marchant argue that they are entitled to damages pursuant to G.L.c. 93A, §11, which governs unfair and deceptive trade practices among businesses.[8]
As alleged in the complaint, the unfair acts in question are outside the conduct contemplated by the statute. “The development of c. 93A suggests that the unfair or deceptive acts or practices prohibited are those that may arise in dealings between discrete, independent business entities, and not those that may *19 occur within a single company.” Szalla v. Locke, 421 Mass. 448, 451-52 (1995) (discussing the inapplicability of c. 93A between parties to a failed business venture); see also Zimmerman v. Bogoff, 402 Mass. 650, 662-63 (1988). The instant dispute is one based entirely on a disagreement between parties within the same company, therefore, Driscoll’s and Marchant’s claims under c. 93A are not cognizable, and must be dismissed.
ORDER
For the foregoing reasons, it is hereby ORDERED that Payne and DeMartino’s motion to dismiss is ALLOWED as to Counts V and XV. It is further ORDERED that Payne and DeMartino’s motion to dismiss is DENIED as to Counts I, II, III, IV, VII, VIII, XI, XII, XIII, XIV, XVII, and XVIII.

Thyssen Elevator (New England) Inc., is the successor in interest to Payne Elevator Corporation. The court will hereafter refer to Payne which was the party-in-interest at all relevant times to this action.

For a detailed summary of the facts pertaining to the underlying cause of action see King v. Driscoll, 418 Mass. 576 (1994).

See note 2, supra.

Among others, King’s suit named Albert Marchant as a defendant. Marchant, like Driscoll, was a corporate officer and shareholder of Payne, which is a closely held corporation. King v. Driscoll Middlesex Sup. Ct. 90-443. Marchant is Driscoll’s co-plaintiff in the above-captioned complaint. However, for the purpose of the instant motion to dismiss, only Driscoll’s memorandum of law in opposition is before the court.

For the purposes of the motion at bar, the court need only concern itself with Counts I, II, and III of the King action.

Neumeier is an attorney licensed to practice law in Massachusetts. In 1990, Payne engaged Neumeier, then a partner in the now dissolved lawfirm of Parker, Coulter, Daley & White (Parker, Coulter), to act as attorney for the company and the individual defendants in the King action.

In pertinent part G.L.c. 156B, §67 reads as follows: “No indemnification shall be provided for any person with respect to any matter as to which he shall have been adjudicated in any proceeding not to have acted in good faith in the reasonable belief that his action was in the best interest of the corporation ...”

In pertinent part, G.L.c. 93A, §§1 and 11 read as follows:
Section 1(b). “Trade” and “Commerce” shall include the advertising, the offering for sale, rent, or lease or distribution of any services and any property... and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate . . . Section 11. Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued trader paragraph (c) of section two may, as hereinafter provided, bring an action in the superior court, or in the housing court as provided in section three of chapter one hundred and eighty-five C, whether by way of original complaint, counterclaim, cross-claim or third-party action for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.